T.C. Summary Opinion 2009-94

UNITED STATES TAX COURT

RAMON EMILIO PEREZ, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8126-07S.                    Filed June 15, 2009.

Ramon Emilio Perez, pro se.

<u>Heather K. McCluskey</u>, for respondent.

GOLDBERG, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the year in issue,

and all Rule references are to the Tax Court Rules of Practice and Procedure. Dollar amounts are rounded.

After a concession[1] the issue for decision is whether petitioner had a taxable distribution in 2004 related to a Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., that Northwestern Mutual Life Insurance Co. (Northwestern) issued.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner resided in California when he filed his petition.

Petitioner is a medical doctor specializing in the treatment of infectious diseases. He began private practice in 1981 and in 1988 he formed a medical corporation. Petitioner employed one full-time employee serving as both receptionist and bookkeeper, and he employed part-time employees. Petitioner's then wife, Lorraine Torres, was and presumably remains an attorney. She operated her legal practice from space in petitioner's office. She also managed all of petitioner's business, financial, and legal affairs.

---

[1]During trial, respondent conceded the accuracy-related penalty for 2004.

Petitioner's medical practice was hospital based.  He would rarely see patients in his office.  He used the office mainly for administrative purposes such as billing, consultations, and telephone calls.

Ms. Torres arranged for the issuance of at least two life insurance policies on petitioner's life.  The policy involved in this case arises from a life insurance application that Ms. Torres obtained from Northwestern.  Petitioner signed the application on February 11, 1988.  The type of policy requested was a "Flexible Life Plan".  The application listed petitioner as the owner and the insured and named Ms. Torres as the direct beneficiary.  "Trustee under will of insured" was listed as the contingent beneficiary.  The amount of life insurance applied for was redacted from the copy of the application in the record.  However, the application noted another preexisting Northwestern life insurance policy for $443,401 together with an accidental death benefit of $100,000.

The following boxes or options were checked on the February 11, 1988, application (capitalization as in the original):

9C.  FLEXIBLE LIFE PLANS (CompLife) – Whole Life

9D.  ADDITIONAL BENEFITS FOR FLEXIBLE LIFE PLANS – Waiver of Premium

10.  If an additional benefit cannot be approved, should the Company issue the policy without the benefit? – Yes

11.  Shall the PREMIUM LOAN provision, if available, become operative according to its terms? – Yes

12. ANNUAL DIVIDENDS until otherwise directed will: - First policy - Purchase paid-up additions.

13. POLICY LOAN INTEREST RATE OPTION - 8%

14. PREMIUM PAYABLE - Annually

After receipt of the application Northwestern issued a life insurance policy (the February policy).

In the early 1990s petitioner's income from his medical practice dramatically decreased and petitioner could no longer afford the life insurance premiums.  By 1995 petitioner and his wife had finalized a chapter 13 bankruptcy.  As a result he closed his office, terminated his employees, and lost his home.  The couple separated and in 1998 divorced.  Ms. Torres handled the legal work for the divorce.  Petitioner did not hire an attorney.

Around the time of the marital separation petitioner starting receiving letters from Northwestern warning that the policy would lapse if he did not act and the company would report the lapse.  Petitioner consulted his former wife with respect to the letters, and she told him that she would take care of the matter and not to worry.

Petitioner never received any cash distributions from Northwestern.  Nonetheless, Northwestern issued petitioner a Form 1099-R for 2003 reporting a taxable distribution of $22,159.  We presume this 2003 Form 1099-R pertained to the preexisiting life insurance policy for $443,401 listed on the February 11, 1988,

life insurance application.  Petitioner prepared his own 2003 Federal income tax return.  He timely filed the return, but he did not include the $22,159 in income.  Instead petitioner attached the Form 1099-R and a letter stating:  "I need your advice as to the meaning of this.  I never received any money from them.  This is all an insurance policy that lapsed."

Petitioner tried to resolve the matter with the Internal Revenue Service (IRS) through a series of telephone and written exchanges, each time hearing from a different representative.  He informed the IRS that he believed the bankruptcy had taken care of the matter.  While petitioner was still waiting for a clarification from the IRS, the IRS issued a Notice CP2000 dated July 25, 2005, informing petitioner of an increase in Federal income tax, penalties, and interest totaling $7,654 for 2003 as a result of Northwestern's Form 1099-R.  Petitioner paid the entire $7,654 but he continued to dispute the adjustment and checked a box on the remittance form stating that he disagreed with the adjustment.  The IRS received the payment on August 26, 2005.  As a result of the full payment the IRS did not issue a notice of deficiency pertaining to 2003.

While the dispute for 2003 was still ongoing, Northwestern issued another Form 1099-R.  This second Form 1099-R reported a taxable distribution for 2004 of $25,331 relating to the February policy in issue.  Because petitioner was still waiting for

clarification regarding 2003, he did not include the $25,331 in his 2004 income.

The IRS issued a notice of deficiency dated March 5, 2007, with respect to 2004 determining a Federal income tax deficiency of $7,072 and a section 6662(a) accuracy-related penalty of $1,414. On April 10, 2007, petitioner filed a petition with this Court seeking redetermination of the 2003 and 2004 Federal income tax deficiencies on the grounds that: (1) He lost all of his assets in the bankruptcy including the cash value of any life insurance; and (2) the IRS did not provide any evidence that he still owned the life insurance policies at issue.

On July 3, 2007, respondent filed a motion to dismiss the petition as it applied to 2003 on the grounds that: (1) The IRS had not issued a notice of deficiency for 2003 and accordingly under sections 6212 and 6213 as well as Rule 13 the Court lacked jurisdiction to hear the matter; and (2) petitioner had no Federal income tax deficiency for 2003 because he had fully paid the deficiency on August 26, 2005. On August 6, 2007, the Court granted respondent's motion to dismiss the petition with respect to 2003.

At trial the Court received into evidence the following three documents that are relevant to our final decision: (1) A copy of the February 11, 1988, insurance application discussed above; (2) a printout of an IRS taxpayer data inquiry computer

screen replicating information from the 2004 Form 1099-R; and (3) a signed Form 2866, Certificate of Official Record, with a raised gold seal and attached to that an IRS internally computer-generated "Wage and Income Transcript" showing data from all the information returns that the IRS received for 2004 with respect to petitioner. The computer replication of the Form 1099-R reports: (1) Northwestern issued the Form 1099-R as a result of a policy termination; (2) a taxable amount at lapse of $25,331; (3) loans repaid at lapse of $106,011; and (4) the last four digits of a redacted account number. These four digits match the last four digits of the redacted account number written on the February 11, 1988, life insurance application. Respondent did not offer and the Court did not receive into evidence a copy of the actual Form 1099-R at issue or a copy of the issued life insurance policy corresponding to the February 11, 1988, application.

## Discussion

In general, the Commissioner's determination set forth in a notice of deficiency is presumed correct and the taxpayer bears the burden of showing that the determination is in error. Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933). Under section 7491(a) the burden of proof regarding a factual matter may shift to the Commissioner if the taxpayer produces credible evidence and meets the other requirements of the section.

In this case however before we apply section 7491(a) we must first consider section 6201(d), because petitioner reasonably raised the issue of the correctness of an information return, the Form 1099-R for 2004.  Section 6201(d) provides:

> In any court proceeding, if a taxpayer asserts a reasonable dispute with respect to any item of income reported on an information return filed with the Secretary * * * by a third party and the taxpayer has fully cooperated with the Secretary (including providing, within a reasonable period of time, access to and inspection of all witnesses, information, and documents within the control of the taxpayer as reasonably requested by the Secretary), the Secretary shall have the burden of producing reasonable and probative information concerning such deficiency in addition to such information return.

Respondent did not challenge and in any event we would find that petitioner has fully cooperated with respondent's requests for information, documents, and meetings.  Petitioner on his own initiative attached a letter to his 2003 Federal income tax return stating that he disagreed with the Form 1099-R, provided his reasons for disagreement, and requested clarification from the IRS.  Likewise after filing his return and for the next 4 years through the date of trial petitioner continued to question why the amounts Northwestern reported on the Forms 1099-R were taxable as income to him.  Petitioner paid the proposed additional tax, penalties, and interest for 2003 totaling $7,654 even though he disagreed with the additional income that respondent asserted.  He also attempted to dispute the tax for 2003 in the petition that he filed in this case.  On the basis of

the above we hold that under section 6201(d) respondent has the burden of producing "reasonable and probative information" regarding the deficiency.

Respondent argues that petitioner's circumstances are sufficiently similar to the taxpayers' circumstances in Atwood v. Commissioner, T.C. Memo. 1999-61, for us to hold that petitioner had gross income in 2004 from the lapse of a Northwestern insurance policy.  We disagree.

In Atwood the taxpayers each purchased a single premium whole life insurance policy.  Each policy provided for the lapse or termination of the policy if the loan balance including unpaid interest grew to be larger than the cash value of the policy.  After a few years the couple suffered financial setbacks forcing them to withdraw as loans the maximum amounts that the policies allowed.  They were unable to repay the loans or the accumulated unpaid interest.  As a result the loan balances exceeded the cash values causing the insurance companies to terminate the policies in 1995.

The insurance companies issued Forms 1099-R for 1995 reporting taxable distributions in the amounts by which the ending cash values exceeded the single premium payments.  The taxpayers timely filed their 1995 joint Federal income tax return without including any income related to the Forms 1099-R.  The Commissioner determined a Federal income tax deficiency for 1995

and the taxpayers petitioned this Court claiming in pertinent part they received very little cash and therefore the terminations were merely "'paper transactions' on the books of the insurance companies."  We held that the lapses gave rise to income because even though the taxpayers received minimal cash, upon termination the lapses resulted in a satisfaction of the loans and were therefore equivalent to payments of the cash surrender values.

However, respondent puts the cart before the horse by assuming that our holding in <u>Atwood</u> applies to the facts present here.  In <u>Atwood</u> we analyzed the policies' terms from which we found facts to arrive at our holding.

In petitioner's case the February policy is not in evidence. We do not know why the policy lapsed, and we do not know the consequences to petitioner in the event of a lapse.  The insurance application form in evidence merely provides some suggestive terms such as a "waiver of premium"; "shall the premium loan provision, if available, become operative according to its terms? – Yes"; and "annual dividends unless otherwise directed will, on the first policy, purchase paid-up additions". We do not know the precise meaning of these terms with respect to this particular insurance policy, or whether the terms in the application were adopted or modified in the February policy or in subsequent riders.  Significantly, the application contains the

escape clause that Northwestern may issue the policy without certain requested benefits.

Respondent's failure to produce a copy of the February policy or to call a representative from Northwestern prevents us from applying the holding in <u>Atwood</u> to the facts in this case.

We do not doubt and petitioner did not contest that Northwestern issued a Form 1099-R for 2004 reporting a taxable distribution of $25,331. We are likewise persuaded that the account number on the Form 1099-R ties into the account number written on the February 11, 1988, insurance application. Petitioner never disputed and outright acknowledged that he received the Forms 1099-R for 2003 and 2004 and that he signed the life insurance application in evidence.

Nonetheless, the point of section 6201(d) is that when a taxpayer raises a reasonable dispute with respect to an information return, and when the taxpayer has fully cooperated, then the Commissioner must produce evidence to establish the fundamental correctness of the deficiency arising from the information return, not merely that the information return existed or that the Commissioner accurately transcribed the information return into the Commissioner's own internal records. See <u>Portillo v. Commissioner</u>, 932 F.2d 1128 (5th Cir. 1991), affg. in part and revg. in part T.C. Memo. 1990-68, and its companion case seeking recovery of litigation costs, 988 F.2d 27,

29 (5th Cir. 1993) holding that as far back as 1935 courts have followed the principle that the Commissioner's "naked assertion" that a taxpayer received unreported income without a proper foundation is not sufficient support for a notice of deficiency and is therefore not entitled to a presumption of correctness), revg. T.C. Memo. 1992-99.

The February 11, 1988, life insurance application is the only evidence respondent produced to show the foundational accuracy of the Form 1099-R.  Without the actual February policy in the record or a Northwestern representative testifying as to how the provisions in the policy applied when a lapse in premium payments occurred, the record is silent as to how Northwestern determined the amounts reflected on the Form 1099-R.  Moreover, we also do not know whether the February policy changed over the years or whether petitioner's subsequent bankruptcy allowed his creditors to receive the cash value of his life insurance policies in effect at the time.

In summary, businesses can make mistakes in reporting data on information returns, and, decisive here, respondent offered no evidence showing that the amounts on the 2004 Form 1099-R are correct.  We conclude respondent has not met his burden of producing reasonable and probative information concerning the deficiency.

To reflect our disposition of the issue,

<u>Decision will be entered</u>

<u>for petitioner</u>.